M'Girk, C. J.,
delivered the opinion of the Court.
Muilanphy, in the Court helow, brought his action against Philipson, for a set of rollers and a frame set up and used in a brewery to grind malt for the brewery.
*443 The ease appears to he, that Joseph and Simon Philipson owned and possessed a lot of land, with a brewery thereon; that about the year 1821, they, by deed, sold the premises to Mullanphy, and that also about that time, Mullanphy made a lease of the land and brewery to Simon Philipson for three years. The lessor, by the lease, lets the ground and brewery to the lessee, and, after describing the ground, says, “ on which said lot of ground, hereby demised, is erected a brew house, and other buildings for the brewing and making malt liquor, together with the vessels, huts, and other articles now being on the said demised premises, and used in the brewing business. To have and to hold the same for three years, yielding rent,” &c. Then, after many other things, come a covenant, on the part of the lessee, to surrender at the end of the term, which is, that he shall keep in repair and surrender, which is in the words and to the effect following: “ The said Simon doth further covenant, promise, and agree to and with the said John Mullanphy,, &c., that he, the said Simon, do and shall, from time to time, and at all times hereafter, during the said term, well and sufficiently maintain, uphold, and keep, all and singular the buildings on the said lot of ground, together with all the vessels, tubs, fixtures, and other articles, now on the said demised premises, and which arc used and employed in the brewing business, in good order and repair, and the same promises so kept in repair, together with the other valuable and lasting improvements, so to be made by the.said John Mullanphy at the end, or other sooner determination of the said term, yield, surrender, and deliver up unto the said John Mullanphy, his heirs and assigns, in such repair. Provided always, that, under the above covenant, the said Simon Philipson shall not be answerable for any injuiy or destruction to the said premises, which may take place from accident by fire or otherwise; and that among the utensils for brewing, aforesaid, it is understood that none shall be surrendered by the said Simon Philipson, but those which are fixtures, properly so called, and included in the assignment of conveyance heretofore made by the said Simon Philipson to said John Mullanphy.
The assignment spoken of here, made by Simon Philipson to Mullanphy, is not clearly shown: but we will suppose it to be the deed of Joseph and Simon Philipson to Mullanphy, which is simply a deed of land and the appurtenances, &c., thereto belonging without any mention of a brewery. By the evidence in the cause, it appears that about the year 1815 or 16, Simon Philipson sent the rollers in question from Philadelphia, to Joseph Philipson in St. Louis, and that Joseph had then on the land a brewery; that he put them up in the brewing establishment for the purpose of grinding matt; that Simon Philipson, when he sent them, made no explanation as to the property of them, and that the said rollers were put up in a mill house in a frame, which frame was not nailed to any part of the house, hut that it was fastened and steadied by wedges and braces to some parts of the house, and that the said rollers were put in motion by a shaft from a large wheel, used for a mill in grinding; that this shaft went through a partition wall, so that the rollers and frame were in an apartment separate from the large wheel, and that the whole was capable of being taken away without, in the least, injuring any part of the other machinery. It appears, that before these rollers were put up, the malt grinding was done by stone, and afterwards by the rollers, though not always so; that they were sent by Simon Philipson to Joseph Philipson to be tried, and that they answered well, and have been, in Europe, used for fifteen years past, as the best contrivance to grind malt for breweries. That when the land was sold to Mullanphy, the said malt mill was then *444 up, and stood and remained with said brewery, and passed from Mullanphy to the possession of said Simon with the brewery and premises leased ; that when his lease expired, he took them away, alledging the said frame and rollers were not properly fixtures. The question to be decided is, whether this malt mill is what the lavs' properly calls fixtures. It is not a question what fixtures may he removed by a tenant, and what not. It is clear that many fixtures may be removed; some for the benefit of trade, as where the tenant erects improvements on the land, and during the term for the purposes óf carrying on trade, he may take them away. But it is not true, that where there is a lease of an establishment, erected for the purpose of carrying on trade, that the tenant can any more carry away the fixtures he has leased, than it is true he may pull down and carry away houses of the most permanent nature.
In the case before the Court, Philipson leased every thing belonging to the brewery ; thi.^ mill then belonged to the brewery ; he, therefore, leased it also, and had not a right to carry it away, no matter by whom put there. If it is what the law properly denominates a fixture, the question to be considered is, what is a fixture? A fixture may be defined to be a thing personal in its nature, but appended to the inheritance, or affixed thereto, so that its separation therefrom would injure or prejudice the inheritance. 3 Bac. 63. If a man erect a furnace in the middle of a floor, though it does not depend on any wall, yet it goes to the heir with the land, and not to the executor, as a chattel; for it is to be esteemed parcel of the house, there placed, on purpose by the ancestor, to he carried, as the law would carry it. (Ibid.) This is the law with respect to heirs and executors. With respect to landlord and tenant, the law is, that the tenant may take away many things, which properly are fixtures, which lie put there for the purposes oi carrying on some trade. In these eases the lessee is considered as the principal, and the implements of carrying on as merely accessary to the trade.
In this case, the inheritance consisted of land, and a brewery thereon. The brewery was the object of the lease, and not the mere land. This malt mill was necessary for the enjoyment of the brewery, though it might he enjoyed without it, but not so well; it was a part of the milling machine erected on the land for the use of the brewery. If a man sell a mill which has a bolt for making flour, he cannot, under pretence that it can be severed from the house without injury, take it away. It is incident to the principal, yet there may be a mill wilhout it.
In the case before the Court, the malt mill was erected in a permanent manner, as much so as was necessary for its use; it constituted a part of the brewing implements ; it was, in fact, a part of the mill belonging to the brewery. It is evident it was put there to be enjoyed with the inheritance ; its purpose and use are ascertained to be for the better enjoyment of the inheritance.
It is said this case is like the case of Mullanphy and Hunt, decided at St. Charles. This is a mistake. In that case, it did not appear for what purpose the kettle was put into the furnace; it might have been for the most temporary purpose. Beside, a kettle is a tiling personal in its nature ; but a rolling malt mill is no more personal in its nature than any other form of mill. The mode of its operation does not make it any less a mill. It was most clearly not a moveable mill, to be used every where and any where. These rollers performed the office of mill stones. A mill stone, fixed up for grinding, cannot be taken by tlie executor. 3 Bac. 63. And why should the rollers that are substituted for them? As well might this man have taken the large wheel from which these rollers received motion, under .the pretence that he originahv *445 made it, or that it could be removed without injuring the walls of the house. In the case of cider mills, erected by the tenant, it has been said, the tenant may take them away, not because they are not fixtures, but because this sort of fixture is made an exception from the general rule in favor of the cider making trade.
The case in 6 Johnson, p. 5, has been cited and relied on to prove, that a bark millstone may be taken away as a thing not a fixture. The case was, where A, sold land to B., having thereon a tannery and bark mill, with a stone to grind the bark: at the time of the sale the mill stones were verbally excepted from the sale of the land, and afterwards a sale of the stone was made to another. This sale of the stone was holden good, not on the ground that the mill-stone was not a fixture, but on the ground that a verbal exception of the stone was sufficient to prevent it passing with the land.
Upon the whole of this case, we think it entirely unlike the case at St. Charles, of Hunt and Mullanphy, and that the judgment of the Circuit Court ought to b<* affirmed.